



*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 3, 2020

**BY ECF & EMAIL**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Souleymane Balde*, 16 Cr. 130 (KPF)

Dear Judge Failla:

The Government respectfully submits this letter in response to Souleymane Balde's application for release from pretrial detention, dated March 31, 2020. (*See* Dkt. No. 101.) For the reasons discussed below, there are no conditions that will reasonably assure Balde's appearance at future court dates and the safety of the community, and therefore, pursuant to the Bail Reform Act, 18 U.S.C. § 3142(e)(1), Balde's request should be denied.

    I.    Background

        a.    The Defendant's December 2015 Arrest

On December 14, 2015, Balde was arrested with an unlicensed firearm and ammunition in connection with an argument with employees of a deli in the Bronx. After the initial verbal altercation, Balde left the deli and returned multiple times: first to point a firearm at individuals inside the deli, and later to fire a single gunshot into the air outside the deli from the passenger seat of an SUV owned by Balde's wife and driven by Balde's brother-in-law. When Balde returned to the deli a third time, witnesses inside the deli had already summoned the police, and were able to identify the SUV to police officers. The officers pulled over the SUV and arrested Balde, and found bullets in Balde's jacket pocket and a firearm under the seat of the SUV, both of which had previously traveled in interstate commerce. At the time of his arrest, Balde had no lawful status in the United States. (*See* Complaint ¶ 3.)

In February 2016, Balde was charged in a one-count indictment with possessing a firearm in violation of 18 U.S.C. § 922(g)(5), which provides, in relevant part, that "it shall be unlawful for any person … who, being an alien … is illegally or unlawfully in the United States … to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(5).

At Balde's arraignment on February 23, 2016, and again at a hearing on March 17, 2016, this Court denied Balde's application for bail on the grounds that he presented a danger to the

community.  The Government did not argue that Balde was a risk of nonappearance because, at the time, Balde maintained a close family relationship and, though he was subject to a final order of removal, Balde had cooperated with Immigration and Customs Enforcement ("ICE") instructions and ICE had for many years been unable to deport Balde because ICE could not obtain a travel document for him.  The Court detained Balde on dangerousness grounds.  (*See* Dkt. Nos. 10, 12.)  At a hearing on November 15, 2016, this Court reconsidered Balde's bail application, and, noting the "passage of time" since Balde's dangerous conduct underlying the present charge, granted Balde's release on certain conditions, including home incarceration.  (*See* Dkt. No. 32.)  Over time, those conditions were gradually made less restrictive to allow Balde to work.

### b. The Defendant's Conditional Guilty Plea

Balde moved to dismiss the indictment, arguing that he was not "illegally or unlawfully in the United States."  (*See* Dkt. No. 18.)  After this Court denied Balde's motion to dismiss on December 2, 2016 (*see* Dkt. No. 35), Balde entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2) on June 26, 2017.  At the change of plea hearing, Balde allocuted to the elements of the offense while reserving his right to appeal this Court's denial of his motion to dismiss.  (*See* Dkt. No. 56.)

### c. The Defendant's Conduct While on Bail Pending Appeal

On October 12, 2017, Balde was sentenced to 23 months' incarceration, approximately half of which Balde had already served, in addition to two years' supervised release.  (*See* Dkt. No. 66.)  On October 19, 2017, this Court granted Balde's unopposed motion for bail pending appeal.  (*See* Dkt. No. 71.)

Balde remained at liberty until this Court revoked his bail in January 2019 following a violent altercation in which Balde slashed his wife and his brother-in-law with a knife and threatened two of his wife's children with the knife, all in the presence of Balde's two-year old daughter.  As this Court observed, after reviewing "disturbing" photographs and bodycam footage, "[i]t does seem . . . that [Balde] became an aggressor upon becoming intoxicated, and others attempted to intervene to protect either themselves or him, and instead suffered some very serious damage as a result."  (Dkt. No. 79, Tr. 19:12-15.)  Balde's wife and brother-in-law did not cooperate with law enforcement, leading to dismissal of criminal charges against Balde in state court, but this Court nonetheless continued Balde's detention in light of Balde's clearly dangerous behavior.

### d. The Defendant's Appeal

Balde reiterated his argument that he was not unlawfully "in" the United States in his appeal to the Second Circuit.  In an opinion dated June 13, 2019, the Second Circuit affirmed this Court's denial of Balde's motion to dismiss.  *See United States v. Balde*, 927 F.3d 71 (2d Cir. 2019).  However, days after the Second Circuit's decision, the United States Supreme Court decided *Rehaif v. United States*, holding that in a prosecution under 18 U.S.C. § 922(g), the Government must prove that the defendant knew he belonged to the relevant category of persons barred from possessing a firearm.  *See Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019).

Balde filed a timely petition for rehearing, on the basis that his guilty plea was accepted in error under the Supreme Court's decision. In an opinion dated November 13, 2019, the Second Circuit vacated the defendant's guilty plea, holding that it was "plain error" that the defendant had not been advised that the Government would be required to establish beyond a reasonable doubt that the defendant *knew* that he was illegally present in the United States. *See United States v. Balde*, 943 F.3d 73, 95-98 (2d Cir. 2019). Accordingly, Balde's guilty plea was vacated and remanded to this Court. The mandate issued on January 8, 2020. (*See* Dkt. No. 92.) By the time this mandate issued, Balde had served the remainder of his prison sentence and was being held in ICE custody. Trial is set to proceed in this matter on June 1, 2020.

### e. The Attempted Removal of the Defendant

Immediately after the Second Circuit mandate issued on January 8, 2020, the Government contacted Balde's deportation officer to arrange for Balde's transfer from ICE custody into BOP custody. At that time, the Government learned that Balde was in ICE custody in New Jersey, that ICE had obtained a travel document for Balde, and that ICE intended to remove Balde from the United States via "escorted removal" on a commercial flight on January 15, 2020. The Government informed Balde's deportation officer that Balde faced criminal prosecution in this District and the United States Marshals intended to writ Balde into BOP custody, and requested that Balde's removal be postponed in order to resolve the pending criminal case. The Government also attempted to contact ICE's office of legal counsel numerous times to discuss the matter. A writ of habeas corpus ad prosequendum was signed by this Court on January 13, 2020.

On January 16, 2020, the Government learned that, notwithstanding the Government's request that ICE postpone Balde's removal, ICE deportation officers took Balde to John F. Kennedy International Airport with the travel document obtained by ICE and attempted to effectuate Balde's removal by escorting him on a commercial flight. The deportation could not be effected, however, because Balde became so physically violent during the escort that the ICE deportation officers determined Balde was too dangerous to permit him to travel on a commercial flight with other passengers. Following this failed removal attempt, the Government learned that ICE was in the process of exploring other removal options for Balde, including those that would involve his physical restraint and/or an escorted removal on a non-commercial flight. Before either option could be implemented, Balde was transferred to the MCC on the writ on January 30, 2020.

As noted on the record during the February 10, 2020 conference before the Court, Balde remains subject to a detainer lodged by ICE, meaning if Balde is released on bail he will likely be released back into ICE custody.[1]

### II.    Applicable Law Governing Balde's Request for Pretrial Release

Under the Bail Reform Act, a court must order a pretrial defendant detained upon finding that there is "no condition or combination of conditions [that] will reasonably assure the

---

[1] In response to an inquiry as to whether it would execute on the detainer should Balde be granted bail by this Court, ICE was presently unable to make a definitive determination. Thus, if Balde were to be bailed, there is some possibility that he be taken into ICE custody and some further possibility that he would be deported, notwithstanding the pendency of this criminal case.

April 3, 2020
Page 4

appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

In making a detention determination, the court is required to consider: (1) the "nature and circumstances of the offense charged, including whether the offense is a crime of violence . . ."; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . criminal history"; (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g).

    III.    <u>The Defendant Is a Danger to the Community</u>

The facts of Balde's underlying offense, Balde's conduct while on bail pending appeal, and his recent violent conduct to prevent his removal demonstrate a pattern of violent behavior and highlight the danger that Balde continues to pose to the community.

First, as the Court is well aware, the circumstances that led to the underlying charge in this case demonstrate Balde's dangerousness. *See* 18 U.S.C. § 3142(g)(1) (directing the court to look at the nature and circumstances of the offense charged in making a detention decision). What started as a verbal altercation was escalated singlehandedly by Balde, who left the scene of the argument and returned *three times* with a loaded weapon. Instead of diffusing the initial conflict, Balde returned to the scene of the altercation with a firearm, which Balde used to menace employees and patrons of the deli. Balde left the scene again, only to return *again*, in an SUV. This time, Balde fired a gunshot into the air from the SUV. When Balde returned to the deli a third time in the SUV, the police had arrived, preventing further violence. Balde's brazen use of a loaded weapon in a crowded public forum demonstrates the dangerousness of Balde's conduct – people could have been seriously hurt simply by Balde brandishing a firearm, much less firing the firearm.

While the Court found the passage of time and Balde's good behavior in pretrial detention warranted his pretrial release after spending nearly a year in custody, Balde's conduct when he was on bail pending appeal again confirmed the danger that he presents to the community. *See* 18 U.S.C. § 3142(g)(1) (directing the court to look at the history and characteristics of the person in making a detention decision). While Balde was on bail pending appeal, he violently attacked members of his own family – including his wife. As the record indicates, Balde again escalated the altercation to the point of violence. After a verbal argument with his brother-in-law, Balde escalated the situation by brandishing the knife and ultimately causing injuries to multiple members of his family.

The underlying offense and the altercation with Balde's family took place nearly three years apart from each other, yet followed a similar pattern: after an initial disagreement, rather than walk away from confrontation, Balde instead escalated the situation to the point of violence, first with a gun pointed strangers and then using a knife on members of his own family.

Balde's recent conduct towards ICE demonstrates that the "passage of time" since these incidents cannot ensure the safety of the community. While Balde historically complied with ICE directives, his January 2020 interactions with ICE demonstrate that Balde will resort to violence

April 3, 2020
Page 5

rather than comply with ICE's directives. The record thus makes clear that no conditions or set of conditions can ensure the safety of the community.

      IV.      <u>The Defendant Presents a Risk of Non-Appearance at Future Court Dates</u>

While the Government has not previously argued that Balde presents a risk of nonappearance, the circumstances of Balde's immigration status have changed significantly since the last time this Court considered bail. Specifically, now that ICE has obtained a valid travel document for Balde, it is for the first time in years in a position to actually effect his removal. These facts indicate that Balde almost certainly *will* be removed from the United States, and Balde *knows* that he will be removed from the United States, which present a risk of Balde's non-appearance in two ways.

First, if Balde is released from BOP custody and returned to ICE custody, pursuant to the ICE detainer currently in effect, Balde may well be removed from the United States by ICE, assuring his non-appearance at future court dates. Although Balde faces criminal prosecution in this District, ICE is under no obligation to keep Balde in the United States and, if ICE's recent response to the Government's request to halt removal is any indication, ICE may choose to remove Balde before his criminal case is resolved. *See United States v. Lett*, 944 F.3d 467, 472-73 (2d Cir. 2019) ("[The defendant] contends that ICE is barred from deporting criminal defendants during the pendency of their criminal cases . . . [b]ut these regulations merely prohibit aliens who are parties to a criminal case from departing the United States *voluntarily*; they do not affect the government's authority *to deport* such aliens pursuant to final orders of removal." (emphasis in original).)

Second, to the extent bail resulted in Balde's release from both BOP and ICE custody, as defense counsel indicated was possible, Balde would have every incentive to flee given that he knows that he can and will be removed from the United States. Indeed, when removal was first attempted in January of this year, Balde resisted violently, demonstrating his unwillingness to follow ICE directives going forward. Should Balde be released from custody, there is every reason to believe that he will do everything in his power – including flight to evade ICE authorities – to avoid removal. As such, there is no set of conditions that will ensure his appearance going forward.

April 3, 2020
Page 6

V.    <u>Conclusion</u>

For the reasons set forth above, Balde's request for pretrial release should be denied.

                                      Respectfully submitted,

                                      GEOFFREY S. BERMAN
                                      United States Attorney for the
                                      Southern District of New York

                            By: _____
                                      Christy Slavik
                                      Kiersten A. Fletcher
                                      Assistant United States Attorneys
                                      (212) 637-1113/2238

cc:    Jennifer Willis, Esq.
        Isaac Wheeler, Esq.