UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | |
|---|---|
| -v.- | 16 Cr. 130 (KPF) |
| SOULEYMANE BALDE, | **OPINION AND ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

Defendant Souleymane Balde is in federal custody awaiting a trial on one count of violating 18 U.S.C. § 922(g)(5). Balde previously pleaded guilty to this offense, but his conviction was vacated by the United States Court of Appeals for the Second Circuit in light of the intervening Supreme Court decision in *Rehaif* v. *United States*, 139 S. Ct. 2191 (2019). Balde now moves for this Court to set bail pursuant to 18 U.S.C. § 3142. Since the Court cannot ensure that Balde would not pose a risk of flight or a danger to the community were he to be released on bail, Balde's motion is denied.

## BACKGROUND

On February 17, 2016, Balde was indicted on one count of possessing a firearm and ammunition while being an alien illegally and unlawfully in the United States. (Dkt. #6). The underlying complaint alleged that Balde had been involved in an argument at a deli on the evening of December 14, 2015. (Dkt. #1). During the argument, Balde pointed a firearm at an individual inside of the deli. (*Id.*). Following the altercation, Balde went away and then returned; he drove by the deli and pointed a firearm out of the front passenger-side window of his SUV and fired one gunshot into the air. (*Id.*). Balde was

pulled over by police following the incident; officers found ammunition on Balde's person and a firearm on the passenger seat of the SUV. (*Id.*). Balde was arraigned on the indictment on February 23, 2020. (Minute Entry for 2/23/2016). The Court held a bond hearing on March 17, 2020, at which time it denied bail. (Minute Entry for 3/17/2016).

On June 29, 2016, Balde moved to dismiss the indictment on the ground that he was not an "alien illegally and unlawfully in the United States," as required by 18 U.S.C. § 922(g)(5). (Dkt. #18). The Court held oral argument on the motion on August 4, 2016. (Minute Entry for 8/4/2016). On October 24, 2016, Balde renewed his request for bail. (Dkt. #26). On November 2, 2016, the Court held a status conference at which time it granted Balde's bail application. (Minute Entry for 11/2/2016). The Court ordered Balde released upon the signing of a $75,000 personal recognizance bond, co-signed by one financially responsible person, and strict pretrial supervision that included home confinement with electronic monitoring. (*See id.*). Balde was only permitted to leave his home for court appearances, meetings with counsel, and medical appointments for him and his family members. (*See id.*). On December 2, 2016, the Court denied Balde's motion to dismiss the indictment. (Dkt. #35 (transcript of oral decision)).

Over the course of the next several months, the Court repeatedly granted Balde's requests for modification of his bail conditions. On March 2, 2016, the Court granted Balde's request to run errands associated with funeral arrangements for his mother-in-law. (Dkt. #44). On March 6, 2017, the Court

permitted Balde to travel to New Jersey to attend the funeral services. (Dkt. #46). On March 31, 2017, the Court permitted Balde to attend his daughter's birthday party. (Dkt. #50). On May 8, 2017, the Court adjusted Balde's bail conditions from home detention to curfew so that he could commence employment as a parking lot attendant. (Dkt. #52). On May 12, 2017, the Court excused Balde's curfew for two weeks so that he could work night shifts. (Dkt. #54).

On June 26, 2017, with trial soon approaching, Balde appeared for a change of plea hearing, and entered a conditional plea of guilty to the sole charge in the indictment. (*See* Minute Entry for 6/26/2017; Dkt. #55). Balde's guilty plea was entered with the reservation that he maintained his right to appeal "the portion of the district court's December 2, 2016 ruling denying the defendant's motion to dismiss in which the district court ruled that the defendant's immigration status renders his presence in the United States 'unlawful' or 'illegal' for purposes of 18 U.S.C. § 922(g)(5)." (Dkt. #55). Balde's bail conditions remained in effect following his conditional plea. (*See* Dkt. #56 (transcript of plea proceeding) at 49).

On October 12, 2017, the Court sentenced Balde principally to a term of 23 months' imprisonment. (*See* Dkt. #67 (transcript of sentencing proceeding) at 33). The Court took under advisement the issue of bail pending appeal. (*See id.* at 34-42). On October 19, 2017, the Court granted Balde's application for bail pending appeal. (Dkt. #71). On January 30, 2018, the Court granted Balde's request to permit travel to New Jersey for work purposes. (Dkt. #73).

On January 18, 2019, the Court revoked Balde's bail and ordered him remanded into custody. (Dkt. #78). The Court's decision followed a hearing in which the Government presented evidence that Balde had slashed his wife and his brother-in-law with a knife and had threatened two of his wife's children with the knife. (*See* Minute Entry for 12/7/2018; Dkt. #79 (transcript of 1/18/2019 hearing)). In deciding to revoke his bail, the Court stated the following:

> I am disturbed by the photographs. I am disturbed by the body camera footage. What happens when [Balde] gets drunk is dangerous. In the first instance, the case that brought him to me, the danger was directed at the public generally. Here, it is even members of his own family could not stop him. As I am saying this, I am looking at the photographs of Ms. Colbourne and of his brother-in-law, who was quite seriously injured as a result of the matter.
>
> So based on what I am seeing in the body camera footage, it does not appear that someone attacked Mr. Balde, as he suggested in the video. It does seem, instead, that he became an aggressor upon becoming intoxicated, and others attempted to intervene to protect either themselves or him, and instead suffered some very serious damage as a result. So I let him out on bail and this happened. I have taken account of that in making this decision. I cannot find that he is not a danger to the community based on the conduct that I have seen abundant evidence of, and I am, therefore, revoking his bail and will order his detention.

(Dkt. #79 at 29).

On March 29, 2019, Balde asked that the Court reinstate his bail conditions because the state misdemeanor case, the incidents of which had been the basis for the Court's revocation of Balde's bail, had been dismissed. (*See* Dkt. #81). The Court denied Balde's application, explaining that it had

4

"revoked Mr. Balde's bond based on the Court's review of video and photographic evidence of the violent altercation that took place a few months ago, during the Thanksgiving holiday, and not based on the misdemeanor charge." (*Id.*).

All the while, Balde pursued his appeal before the Second Circuit, arguing that he was not "unlawfully in" the United States. In an opinion dated June 13, 2019, the Second Circuit affirmed this Court's denial of Balde's motion to dismiss. *See United States* v. *Balde*, 927 F.3d 71 (2d Cir. 2019). However, days after the Second Circuit's decision, the United States Supreme Court decided *Rehaif* v. *United States*, holding that in a prosecution under 18 U.S.C. § 922(g), the Government must prove that the defendant knew he belonged to the relevant category of persons barred from possessing a firearm. *See Rehaif* v. *United States*, 139 S. Ct. 2191, 2200 (2019).

Balde filed a timely petition for rehearing, on the basis that his guilty plea had been accepted in error under the Supreme Court's decision. In an opinion dated November 13, 2019, the Second Circuit vacated Balde's guilty plea, holding that it was plain error that Balde had not been advised that the Government would be required to establish beyond a reasonable doubt that the defendant knew that he was illegally present in the United States. *See United States* v. *Balde*, 943 F.3d 73, 95-98 (2d Cir. 2019). Accordingly, Balde's guilty plea was vacated and remanded to this Court. The mandate issued on January 8, 2020. (*See* Dkt. #92). By the time the mandate issued, Balde had

served the remainder of his prison sentence and was being held in U.S. Immigration and Customs Enforcement ("ICE") custody. (See Dkt. #94).

The Court held a conference on February 10, 2020, at which time the Government notified the Court of its intention to continue proceedings against Balde. (*See* Minute Entry for 2/10/2020). At a status conference on March 26, 2020, the Court notified the parties that a previously-set May trial date might have to be pushed back to June 1, 2020, given facilities issues relating to the COVID-19 Pandemic. (*See* Minute Entry for 3/26/20). The Court later confirmed with the parties by email that trial would begin on June 1, 2020.

On March 31, 2020, Balde filed an application seeking his release on his own recognizance or, in the alternative, that the Court order that the writ that brought Balde into federal court be deemed satisfied. (Dkt. #101). Balde's application explains that since his plea has been vacated by the Second Circuit and his case remanded back to this Court, he is in pretrial status again and qualifies to be considered for bail conditions pursuant to 18 U.S.C. § 3142. (*Id.*). The Government responded by letter dated April 3, 2020, opposing the requested relief. (Dkt. #103).

## DISCUSSION

Under the Bail Reform Act, a court must order a pretrial defendant detained upon finding that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

Because the law generally favors bail release, the Government carries the burden of persuasion in seeking pretrial detention, and it must do so by a preponderance of the evidence. *See United States* v. *Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). In making determinations concerning the setting of bail conditions, the court is required to consider: (i) the "nature and circumstances of the offense charged, including whether the offense is a crime of violence ..."; (ii) "the weight of the evidence against the person"; (iii) "the history and characteristics of the person, including ... criminal history"; and (iv) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

The Court agrees with the Government that Balde is both a danger to the community and a risk of flight. To begin, the Court finds that the circumstances that led to the underlying charge in this case demonstrate Balde's dangerousness. *See* 18 U.S.C. § 3142(g)(1) (directing the court to look at the nature and circumstances of the offense charged in making a detention decision). What started as a verbal altercation between Balde and patrons at a deli was escalated by Balde, who left the scene of the argument and returned several times with a loaded weapon. Not only did Balde use the weapon to threaten the deli patrons, but he also fired a warning shot near a crowded area.

The Court released Balde on bail during pretrial proceedings in his initial prosecution, after his guilty plea, and, initially, while his appeal was pending. The Court repeatedly granted Balde's requests to modify his bail conditions in order to give him more liberty. However, Balde's conduct while on bail pending

7

appeal confirmed the danger he presents to the community.  *See* 18 U.S.C. § 3142(g)(1) (directing the court to look at the history and characteristics of the person in making a detention decision).  While Balde was on bail pending appeal, he violently attacked members of his own family — including his wife.  As the record indicates, Balde again escalated a verbal altercation to the point of violence.  Following an argument with his brother-in-law, Balde resorted to brandishing a knife and causing injuries to multiple members of his family.  The underlying § 922(g)(5) offense and the altercation with Balde's family took place nearly three years apart from each other, yet followed a similar pattern: an initial disagreement, an opportunity to walk away from confrontation, and Balde's decision to resort to violence, first with a gun pointed at strangers and then with a knife used on members of his own family.

The Government also presents new circumstances indicating Balde's dangerousness.  In particular, after the Second Circuit mandate issued on January 8, 2020, the Government contacted Balde's deportation officer to arrange for his transfer from ICE custody into BOP custody.  At that time, the Government learned that Balde was in ICE custody in New Jersey; that ICE had obtained a travel document for Balde; and that ICE intended to remove Balde from the United States via "escorted removal" on a commercial flight on January 15, 2020.  The Government informed Balde's deportation officer that Balde now faced criminal prosecution in this District and that the United States Marshals Service intended to writ Balde into federal Bureau of Prisons ("BOP") custody; it requested that Balde's removal be postponed in order to

resolve the pending criminal case. To that end, on January 13, 2020, the Court issued a writ of *habeas corpus ad prosequendum.*

On January 16, 2020, the Government learned that, notwithstanding its request that ICE postpone Balde's removal, ICE deportation officers took Balde to John F. Kennedy International Airport with the travel document obtained by ICE and attempted to effectuate Balde's removal by escorting him on a commercial flight. The deportation could not be accomplished, however, because Balde became so physically violent during the escort that the ICE deportation officers concluded that Balde was too dangerous to permit him to travel on a commercial flight with other passengers.[1]

To persuade the Court that he is not dangerous, Balde points to the fact that for two years (from November 2016 to November 2018), he remained on bail without incident. However, the incident that caused the Court to revoke Balde's bail and the more recent incident with ICE indicate that Balde has not changed his ways. Indeed, Balde's conduct during the November 2018 incident shows that Balde is dangerous even when confined to his home. Accordingly, the Court has serious concerns that Balde's violent conduct persists. With the information before it, the Court finds that no conditions or set of conditions can reasonably ensure the safety of the community.

---

[1] Following this failed removal attempt, the Government learned that ICE was in the process of exploring other removal options for Balde, including those that would involve his physical restraint and/or an escorted removal on a non-commercial flight. However, before either option could be implemented, Balde was transferred to the Metropolitan Correctional Center on the writ on January 30, 2020.

The Court also notes, as the Government argues, that Balde's immigration status has changed significantly since the last time this Court considered granting Balde bail. Now that ICE has obtained a valid travel document for Balde, it is, for the first time in years, in a position to bring about his removal. The Court recalls that the reason Balde's removal had stalled for many years, prior to the instant criminal action, was because Balde could not obtain a valid travel document. This new development in Balde's immigration case heightens the risk that Balde will fail to appear at future court proceedings in two ways.

*First*, if Balde is released from BOP custody and returned to ICE custody, pursuant to the ICE detainer currently in effect, Balde may well be removed from the United States by ICE, assuring his non-appearance at future court dates. Although Balde faces criminal prosecution in this District, ICE is under no obligation to keep Balde in the United States and ICE may choose to remove Balde before his criminal case is resolved. *See United States* v. *Lett*, 944 F.3d 467, 472-73 (2d Cir. 2019) ("[The defendant] contends that ICE is barred from deporting criminal defendants during the pendency of their criminal cases . . . [b]ut these regulations merely prohibit aliens who are parties to a criminal case from departing the United States *voluntarily*; they do not affect the government's authority *to deport* such aliens pursuant to final orders of removal." (emphases in original)).

*Second*, to the extent bail would result in Balde's release from both BOP and ICE custody, as defense counsel has indicated is possible, Balde now has

every incentive to flee, given that he knows that this new travel document means his removal can actually be accomplished.  Indeed, when removal was first attempted in January 2020, Balde resisted violently, demonstrating his unwillingness to follow ICE directives going forward.  Should Balde be released from custody, there is every reason to believe that he will do everything in his power — including flight to evade ICE authorities — to avoid removal.  As such, the Court believes there is no set of conditions that will ensure Balde appears at future proceedings before this Court.

Further, the Court is not moved by Balde's argument that he has already served the entirety of his 23-month sentence and that fundamental fairness dictates that Balde be released on bail.  The Court sentenced Balde to 23 months on the record then before it, which preceded the attacks on his family members and ICE officers.  At the most recent status conference in this case, the parties indicated that this case will proceed to trial.  While the Court, of course, will not opine here on the likelihood of Balde's conviction, it notes that it is not necessarily the case that Balde would receive the same sentence following a retrial, were he to be convicted at trial.  *See Alabama* v. *Smith*, 490 U.S. 794, 801 (1989) (noting that relevant sentencing information available after a guilty plea will be considerably less than that available after a trial, at which time the trial judge may gather a fuller appreciation of the nature and extent of the crimes charged); *accord United States* v. *Atehortva*, 69 F.3d 679, 683 (2d Cir. 1995).

## CONCLUSION

For these reasons, Balde's application for bail is DENIED. Balde will remain detained pending trial in this action or further order of the Court.

The Clerk of Court is directed to terminate the motions at docket entries 7, 18, 26, 42, 61, 90, and 101.

SO ORDERED.

Dated: April 6, 2020
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge